IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **MARIA MERCEDES CANCINO,** *Individually and as Representatives of the Estate of* **MARIO MARTINEZ,** *and* **JULIAN PUGA** *PLAINTIFFS* | § § § § § § § | |
| **V.** | § § § | |
| **CAMERON COUNTY, TEXAS, OMAR LUCIO,** *Individually and Officially as Cameron County, Texas Sheriff,* **ANTONIO TELLA,** *In his Individual and Official Capacity* *DEFENDANTS* | § § § § § § § § § § | **CIVIL ACTION NO. _____** **JURY DEMAND** |

**PLAINTIFFS' ORIGINAL COMPLAINT AND
JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT**:

Plaintiffs, Maria Mercedes Cancino, Individually and as Representative of the Estate of Mario Martinez, Deceased and Julian Puga (collectively referred to as "Plaintiffs") file their Plaintiffs' Original Complaint and Jury Demand complaining of Defendants Cameron County, Texas; Omar Lucio, Individually and Officially as Cameron County, Texas Sheriff; and, Antonio Tella, individually (collectively referred to as "Defendants") and for the causes of action would respectfully show the Court as follows:

## A. JURISDICTION & VENUE

1.      This is an action for damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendments to the United States Constitution. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 because it involves a Federal question; 28 U.S.C. § 1331 and § 1343 (Civil Rights).

2.      Venue is proper in the United States District Court of Texas Brownsville Division pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events, acts and omissions giving rise to the claims occurred in Cameron County Texas, which is within jurisdiction of the Southern District of Texas Brownsville Division.

3.      Plaintiffs herein comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and the requirements of *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), which requires that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

## B. PARTIES

4.      Plaintiff, Maria Mercedes Cancino, files suit individually and as estate administrator of the estate of Mario Martinez for damages resulting from the death of her husband, Mario Martinez, who died as a direct result of the unconstitutional policies and supervision promulgated and practiced by Defendants, which constitute intentional maltreatment and deliberate indifference. Maria Mercedes Cancino is a resident of the Tamaulipas, Mexico when all substantial events, acts and omissions giving rise to the claims occurred within the jurisdictional limits of Cameron County, Texas.

5. Plaintiff Julian Puga, files suit for damages resulting from the unconstitutional policies and supervision promulgated and practiced by Defendants, which constitute intentional maltreatment and deliberate indifference. Julian Puga are individuals residing in Cameron County, Texas when all substantial events, acts and omissions giving rise to the claims occurred within the jurisdictional limits of Cameron County, Texas.

6. Defendant, Cameron County, Texas, is a unit of local government organized under the laws of the State of Texas and at all times relevant to this case acted under color of law. Cameron County may be served with process by serving the Cameron County Judge, Eddie Trevino Jr.

7. Defendant, Omar Lucio, is the Sheriff of Cameron County, Texas is being sued in his individual and official capacity and at all times relevant to this case acted under color of law.

8. Defendant, Antonio Tella, was at all times relevant to this cause of action employed by the Cameron County Sheriff's Department and acted under color of law. Antonio Tella is sued in his individual and official capacity.

### D. STATEMENT OF FACTS

9. On 06/08/17, Michael Diaz Garcia, an inmate at the Cameron County Detention Center, was scheduled for a dentist appointment in Brownsville, Texas. Defendant, Antonio Tella, acting in his official capacity, used a vehicle owned and operated by Cameron County, Texas to transport Mr. Garcia from the detention facility to a dental clinic located on or about the 3700 block of Boca Chica Boulevard in Brownsville, Texas. While at the parking lot of the dental clinic at approximately 1:09 P.M., Mr. Garcia overpowered Antonio Tella and escaped from custody with Antonio Tella's handgun and service belt. Antonio Tella was the

sole officer assigned to transport Mr. Garcia to his dental appointment, which is in direct violation of the Cameron County Sheriff Department's transportation policy requiring at least two officers to supervise any transportation of local inmates to and from the detention facility.

10. Upon escape, Mr. Garcia, who was still in possession of Antonio Tella's handgun, swam across a nearby waterbed and forcibly entered a home located on the 300 block of Fruitdale Road that was being leased by Blanca Puga and her family. At the time of the forcible entry, Plaintiffs Julian Puga, Maria Mercedes Cancino, and Mario Martinez occupied the home. Upon gaining entry into the home, Mr. Garcia demanded a vehicle and keys from Mario Martinez who attempted to calm Mr. Garcia down. Mr. Garcia fired Antonio Tella's handgun at Mr. Martinez, wounding him, and leading to Mario Martinez's eventual death. Maria Mercedes Cancino, who witnessed the shooting of her husband, was then held at gunpoint by Mr. Garcia and forced into the room occupied by Julian Puga. Mr. Garcia demanded the keys to Julian Puga's vehicle at gunpoint at which time Julian Puga provided the keys to a 2014 blue Hyundai Elantra owned by Blanca Puga, Julian Puga's mother. As a result, Maria Mercedes Cancino and Julian Puga suffered severe emotional distress and mental anguish damage requiring extensive therapy and medical assistance that continue to occur and harm Plaintiff Puga and Cancino, which is expected to continue into the future indefinitely. Upon identifying the 2014 blue Hyundai Elantra, officers begin a high-speed pursuit of Mr. Garcia from Brownsville, Texas at or around Paredes Line Road and Farm-to-Market Road 511. The high-speed chase ended near San Benito, Texas where officers seriously injured Mr. Garcia after gunfire ensued. Mr. Garcia was later pronounced dead at a local hospital.

11.     Defendants were aware of Mr. Garcia's violent and suicidal tendencies at the time of transport. On 05/19/2017, a jury found Mr. Garcia guilty of all 4 counts under cause number 2016-DCR-01051 stemming from a violent criminal episode on 02/14/2016. The Counts under 2016-DCR-01051 were as follows; (1) Burglary of a habitation; (2) Aggravated Assault with a Deadly Weapon; (3) Aggravated Assault with a Deadly Weapon; and (4) Aggravated Assault with a Deadly Weapon. Mr. Garcia was still in the custody of the Cameron County Sheriff's Department since his sentencing hearing was scheduled to occur on 06/19/2017—11 days later. Due to Mr. Garcia's death prior to his sentence, the Cameron County District Attorney's Office dismissed the charges against Mr. Garcia under 2016-DCR-01051. However, at the time of the incident that gave rise to this cause of action, Cameron County, Texas was on actual notice of inmate Garcia's violent and suicidal tendencies.

### E.  CAUSES OF ACTION

**COUNT 1: 42 U.S.C.A. § 1983 – STATE CREATED DANGER**

> **DEFENDANT CAMERON COUNTY'S DELIBERATE INDIFFERENCE AND ACTUAL KNOWLEDGE TO A KNOWN RISK OF DANGER VIOLATED PLAINTIFFS' LIBERTY INTERESTS SECURED BY THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

12.     Plaintiffs re-allege and incorporate the facts and allegations set forth in Paragraphs 1 through 11 herein.

13.     Plaintiffs assert the Fourteenth Amendment Constitutional right to be free from state-created danger.

14.     Under the Supreme Court holding in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), a special relationship arises between an incarcerated inmate such as Michael Diaz Garcia and the Cameron County Sheriff's Department since an

incarcerated inmate is in total deprivation of his personal liberty.

15. This special relationship forms the basis of a duty to protect third parties from violations of the Fourteenth Amendment substantive due process right against "state created danger". *McClendon v. City of Columbia*, 258 F.3d 432, 436 (5th Cir. 2001).

16. In attempting to fulfill its Constitutional obligation to provide incarcerated inmates with reasonable medical care, the Defendants' deliberately used their authority to create a dangerous custom or practice of improper inmate transportation. The unconstitutional custom or practice entails: (1) understaffing the Cameron County Sheriff's Department for inmate transport; (2) failing to secure inmates with proper mobility-restraining devices while in transport; (3) failing to perform a sufficient search of the inmates person for weapons prior to transport (herein collectively referred to as the "custom or practice of improper inmate transportation").

17. Defendants' constitutionally deficient conduct was the widespread custom or practice of improper inmate transportation. The custom or practice of improper inmate transportation was contrary to the Cameron County Sheriff's own stated inmate transport policy, which required, at minimum, two guards to transport inmates into the Brownsville community.

18. Court records show that, under Cameron County cause number 2016-DCR-01051, Defendants were on actual notice that inmate Garcia had committed similar felonious acts of violence against other members of the community and therefore was a true danger to the community.

19. Defendants' inmate transport procedures, while ostensibly appearing to deprive inmates of total physical liberty, afforded inmate Garcia space and opportunity to: (1) hide a

homemade knife; (2) produce the knife; (3) slash officer Tella in the neck; and (4) escape into the community. The custom or practice of improper inmate transportation created by the Defendants was a dangerous environment. The Defendants knew the custom or practice of improper inmate transportation dangerously ill-equipped transport officers in an escapee scenario. The Defendants used their authority to create an opportunity that would not otherwise have existed for inmate Garcia's crimes to occur. *Piotrownski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001). Defendants knew of the immediate risk that faced the public due to the custom or practice of improper inmate transportation. Defendants were provided actual notice of inmate Garcia's violent and suicidal tendencies.

20. Defendants' custom or practice of improper inmate transportation exposed the public to greater danger than had the state not acted at all.

21. The Defendants created or increased the danger to the Plaintiffs and Defendants' deliberate indifference towards Plaintiffs' Fourteenth Amendment Constitutional right was the moving force that caused the foreseeable injury to the Plaintiffs.

## COUNTY LIABILITY: CONSTITUTIONAL CLAIM UNDER 42. U.S.C. SEC. 1983

22. Plaintiffs re-allege and incorporate the facts and allegations set forth in Paragraphs 1 through 21 herein.

23. Cameron County is a person under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and is subject to liability under 42 U.S.C. Sec. 1983 because it acted under color of law, through its agents at the Sheriff's Department, in violation of Plaintiffs' constitutional rights against state created danger.

24. As ultimate policymaker at the Cameron County Detention Facilities, Sheriff Omar Lucio knew as he wrote, enacted and or adopted the safe transport provisions intended to protect third parties from danger when inmates are transported into the community for

medical services.

25. With knowledge of the substantial risks to the public that its own policy was designed to avoid, the Sheriff consciously disregarded these risks to practice a different custom that included the following:

    a. transporting dangerous inmates without the additional supervision and protection of an additional jailer or other employee;

    b. failing to adequately restrain dangerous and suicidal inmates with mobility-restraining devices;

    c. failing to adequately secure that dangerous and suicidal inmates had no weapons prior to transport into the community.

26. This custom created a persistent, widespread practice of Cameron County officials or employees that, although not formally adopted, is so common and well established that it fairly represents Cameron County policy. Sheriff Lucio acted with deliberate indifference towards the risk in allowing such a custom to manifest.

27. The inference that a substantial risk of serious harm could be drawn and was actually drawn is supplied by the contents of the disregarded policy itself. The inmate transport policy was intended and designed in every way to eliminate the risk of a state created danger to third parties. The custom or practice of improper inmate transportation disregarded those risks.

28. The custom was the moving force that led to the failure of the constitutional duty to protect against state created danger arising from the special relationship created between Defendants and inmate Garcia.

## SUPERVISORY LIABILITY

29. Plaintiffs re-allege and incorporate the facts and allegations set forth in Paragraphs

1 through 28 herein.

30. Antonio Tella, who is an employee working under the supervision of Cameron County Sheriff, Omar Lucio's, violated Plaintiffs' constitutional rights.

31. Sheriff Omar Lucio failed to train and failed to supervise Antonio Tella as well as all transport officers at Cameron County detention facilities.

32. Sheriff Omar Lucio's failure to train and supervise caused the violation of Plaintiffs' constitutional rights to be free from state created danger.

33. Sheriff Omar Lucio acted with deliberate indifference as he was well aware that a specific omission of training and supervision that disregarded or left out standards, such as enhanced pat downs for weapons prior to inmate transport and proper use of mobility-restraining devices, was essential to eliminate the risk of harm to the public when an inmate is in transport.

34. The Sheriff's deliberate disregard of its own policy goes beyond mere knowledge or acquiescence but constitutes the affirmative act of allowing a dangerous inmate into the community without constitutional protections to the public.

35. With the measures not taken, the Cameron County Sheriff's actual conduct created and increased the danger to the Plaintiffs and to the public. The safety measures within the Sheriff's policy manual were disregarded customarily and allowed an inmate with multiple past convictions involving violent assault and suicidal tendencies into the community with the use of weapons.

36. Sheriff Omar Lucio was aware his department officials were understaffing the transport of inmates in violation of the Department's own stated policy. As the Cameron County Sherriff, he was entrusted with ultimate authority in the execution of the safety policy

but deliberately chose indifference by running the risk of assigning inadequate staff to transport inmates into the public in order to fund other priorities.

37. The facts of the case at bar warrant instruction on the single-act exception identified in *Brown v. Bryan Cnty.*, 219F.3d 450 (5th Cir.2000).

## QUALIFIED IMMUNITY: CONSTITUTIONAL CLAIMS UNDER 42. U.S.C. SEC. 1983

38. Plaintiffs re-allege and incorporate the facts and allegations set forth in Paragraphs 1 through 37 herein

39. Qualified Immunity provides protection for all but the plainly incompetent government officials or those who knowingly violate the law. See *Malley v. Briggs*, 475 U.S. 335 (1986). The official who knew that what he was doing was wrongful under clearly established law is not entitled to qualified immunity.

40. The clearly established Constitutional right is the right to be free from a state created danger arising from the special relationship between Cameron County and its Sheriff, and agents, and inmate Garcia who was in the Cameron County's custody and without personal liberties.

41. A clearly established Constitutional right for qualified immunity purposes "does not mean that the very action in question has previously been held unlawful" but "that in light of pre-existing law it was apparent" *Wilson v Layne*, 526 U.S. 603, 614-15 (1990).

42. Both Defendant Omar Lucio and Defendant Antonio Tella have incurred individual liability because their acts of deliberate indifference towards Plaintiffs' Constitutional rights to be free of exposure to greater harm and danger due to the affirmative conduct and actions or decisions of the state.

43.     Lucio and Tella acted or failed to act with knowledge and the awareness of the specific policy provisions, custom practice or procedure of transporting dangerous inmates that substantially increased the risk of harm and injury to the Constitutional rights of the Plaintiffs.

44.     The Sheriff, having knowledge of the increased risk, continued by his actions or omissions, to allow this unconstitutional custom of deficient inmate transport that led to the state created danger at bar.

45.     Mr. Tella and Omar Lucio knew or should have known of the unreasonable actions of: (1) transporting a dangerous criminal without the additional supervision of another jailer or sheriff employee; (2) failing to adequately restrain inmate Garcia with mobility-restraining devices; and (3) failing to adequately secure that inmate Garcia did not have a weapon prior to transport. This custom of unreasonable actions violated Plaintiffs' clearly established Constitutional right to be free from state created danger.

**COUNT 2: SHOCKS THE CONSCIENCE CLAIM UNDER 42. U.S.C. SEC. 1983**

46.     Plaintiffs restate the facts and allegations described above as through set out in full herein. The custom or practice of improper inmate transportation violated Plaintiffs' Fourteenth Amendment substantive due process rights and Defendants acted with deliberate indifference towards the risks at bar. The custom or practice of improper inmate transportation "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833 (1988). The Defendants' custom or practice of improper inmate transportation is arbitrary and violates the decencies of civilized conduct and does not comport with traditional idea of fair play and decency. The custom created a circumstance that interferes with the rights implicit in the concept of ordered liberty.

## DAMAGES

47. As a direct and proximate result of the Defendants' custom or practice of improper inmate transportation, Defendants' violation of Mr. Mario Martinez's Constitutional rights incurred the following injuries and damages:

    a. Medical expenses for Mr. Martinez

    b. Mental anguish in the past for Mr. Martinez and past and future for his survivors

    c. Physical impairment.

    d. Physical pain and suffering.

    e. Death

48. As a direct and proximate result of the Defendants' custom or practice of improper inmate transportation, Defendants' violation of Mrs. Maria Mercedes Cansino's constitutional rights incurred the following injuries and damages individually:

    a. Past and future loss of companionship

    b. Medical expenses

    c. Mental anguish

    d. Physical pain.

49. As a direct and proximate result of the Defendants' custom and practice of improper inmate transportation, Defendants' violation of Julian Puga's constitutional rights incurred the following injuries and damages:

    a. Mental anguish

    b. Medical expenses

    c. Physical pain and suffering.

## ATTORNEYS FEES

58. Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. §1988(b).

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that upon trial on the merits, they recover compensatory damages against Defendants, officially and individually; that Plaintiffs also recover punitive damages against Defendants; and that Plaintiffs recover against each Defendant all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation. Moreover, Plaintiffs pray for all pre-judgment and post judgment interest that can be assessed against the Defendant in the event of recovery; and that Plaintiffs recover against each Defendant any and all other general or specific relief to which they prove themselves entitled

Respectfully Submitted,

**STAPLETON AND STAPLETON**
Ed Stapleton
Texas Bar No. 19058400
Southern District Bar No. 1501
2401 Wild Flower Drive, Suite C
Brownsville, Texas 78526
Telephone 956-504-0882
Fax 956-504-0814

By: /s/ Ed Stapleton
**Ed Stapleton**
Texas Bar No. 19058400
Southern District Bar No. 1501
2401 Wild Flower Drive, Suite C
Brownsville, Texas 78526
Telephone 956-504-0882
Fax 956-504-0814

**Demand for Jury Trial**

Plaintiffs hereby demand trial by jury pursuant to Fed.R.Civ.P. 8(b)