UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA MERCEDES CANCINO, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 1:18-CV-135 |
| | § | |
| CAMERON COUNTY TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Defendants Cameron County, Omar Lucio, and Antonio Tella's Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint with Authority in Support and in the Alternative Motion for a More Definite Statement Pursuant to FRCP 12(e) (Doc. 20). Having considered the motion, the briefing of the parties, the relevant facts, and the applicable law, the Court finds the motion well taken.

### I.      The Plaintiffs' Allegations[1]

In June 2017, the Cameron County Sheriff's Department held Michael Diaz Garcia in custody as he awaited sentencing. A jury had found Mr. Garcia guilty of four violent crimes, including burglary of a habitation and three counts of aggravated assault with a deadly weapon. On or about the day of the jury's verdict, Mr. Garcia told his attorney that he was going to commit suicide. Mr. Garcia's attorney immediately relayed that information to the detention facility that held Mr. Garcia. Defendant Cameron County knew of Mr. Garcia's violent and suicidal tendencies during the time period relevant to this lawsuit.

About eleven days before Mr. Garcia's sentencing hearing, Defendant Antonio Tella, an employee of the Cameron County Sheriff's Department, transported Mr. Garcia to a dental appointment. Officer Tella drove a Cameron County vehicle, and was the sole officer in the car

---

[1] For purposes of considering a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the Plaintiffs' allegations as true.

with Mr. Garcia, despite Cameron County policy that required at least two officers to supervise the transportation of local inmates to and from the detention facility.[2]

In the dental clinic's parking lot, Mr. Garcia overpowered Officer Tella and escaped with Officer Tella's handgun and service belt. Mr. Garcia swam across a body of water and then forcibly entered a home, where he encountered Mario Martinez, his wife, Maria Mercedes Cancino, and J.P. (a minor). When Mr. Martinez attempted to calm Mr. Garcia down, Mr. Garcia used Officer Tella's handgun to shoot Mr. Martinez. Mr. Garcia made his getaway in a car that was at the home. J.P. (a minor) called for emergency assistance for Mr. Martinez, who ultimately died from his wounds.

Shortly after Mr. Garcia fled the home, the police identified the vehicle and engaged in a high speed chase. The pursuit ended in San Benito, where officers fatally injured Mr. Garcia in a shootout.

The Plaintiffs include Mrs. Cancino, who brings suit individually and as the representative of the estate of Mr. Martinez, as well as Ms. Blanca Puga as next friend of J.P. (a minor). The Plaintiffs allege causes of action against all Defendants under 42 U.S.C. § 1983, and against Cameron County under the Texas Tort Claims Act.

## II. Standard of Review

Defendants seek dismissal on the grounds that Plaintiffs do not state a claim under which relief can be granted. *See* FED. R. CIV. PROC. 12(b)(6). When considering a Rule 12(b)(6) motion, a court considers only the allegations in the complaint and must accept the factual allegations as true, viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982). In order to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

---

[2] Although the record does not specify Mr. Tella's position with the Cameron County Sheriff's Department, the Court notes that Mr. Tella carried a firearm and service belt, strongly suggesting he worked as an officer during the events at issue.

that is plausible on its face.'" *Aschroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007)).  This plausibility standard requires the plaintiff to plead facts sufficient to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The pleadings must suffice to nudge a plaintiff's claims across the line from conceivable to plausible.  *Twombly,* 550 U.S. at 570.

### III.    Analysis

### A.  Claims Based on 42 U.S.C. § 1983

Plaintiffs advance two causes of action under 42 U.S.C. § 1983.  *See* First Amended Complaint at pp. 6, 13.  To state a viable claim under this statute, the Plaintiffs "must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  *Doe ex. Rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc).  In the current case, the Plaintiffs base their § 1983 claims on the state-created danger theory and on the allegations that the Defendants' conduct shocks the conscience.  Neither theory presents a claim upon which relief can be granted for the Plaintiffs.

### 1.  The  State-Created Danger Theory

The Plaintiffs summarize their first cause of action as follows:

> Defendants' deliberate indifference and actual knowledge of known victims and a known risk of danger violated each Plaintiff's life and liberty interests secured by the due process clause of the Fourteenth Amendment to the United States Constitution.

First Amended Complaint (Doc. 14) at ¶ 15 (Count 1, title).  Specifically, the Plaintiffs allege that the Defendants knew of Mr. Garcia's propensity for violence and of his suicidal inclinations.  The Defendants also "knew the custom or practice of improper inmate transportation and suicidal notice procedures dangerously ill-equipped transport officers in an escapee scenario and did not remedy its policy."  *Id.* at ¶ 23.  The Defendants' conduct created a danger that previously did not exist, and the Defendants "knew the Plaintiffs were victims of Mr. Garcia's suicide mission

due to their geographical proximity to where the escape began and the emergency phone call placed by [Mrs. Cancino]." *Id.*[3] The Defendants' actions "exposed the Plaintiffs to greater danger than had the state not acted at all." *Id.*

Accepting the Plaintiffs' allegations as true for purposes of the Rule 12 analysis, those allegations cannot support a viable claim under § 1983. For purposes of the statute, a person acting under color of state law must commit the alleged constitutional deprivation. *See Covington Cty. Sch. Dist.*, 675 F.3d at 854. "As a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cty.*, 489 U.S. 189, 197 (1989). In the present case, the Plaintiffs identify the escaped inmate, Mr. Garcia, as the individual who harmed them. As a result, the Plaintiffs' allegation do not establish that a state actor violated their constitutional rights.

Plaintiffs urge the Court to recognize a theory that has emerged in the wake of *DeShaney*, through which courts in other circuits have recognized that individuals can hold state actors accountable under § 1983 if the state actors "affirmatively created the plaintiffs' peril or acted to render them more vulnerable to danger" caused by private individuals. *Carlton v. Cleburne Cty.*, 93 F.3d 505, 508 (8th Cir. 1996). Although variations exist, the general elements of this theory include:

> (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006); *see also Covington Cty. Sch. Dist.*, 675 F.3d at 863–865 (summarizing how various circuits have formulated the theory).

---

[3] The Plaintiffs' First Amended Complaint does not specify when Mrs. Cancino placed the emergency phone call, and at an earlier point alleges that it was J.P. (a minor) who placed a call for emergency assistance after Mr. Garcia shot Mr. Martinez. In any event, it is a logical assumption that any call occurred at some point after Mr. Garcia forcibly entered the home.

The Fifth Circuit, however, "has consistently refused to recognize a 'state-created danger' theory of § 1983 liability". *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004); *see also McClendon v. City of Columbia*, 305 F.3d 314, 327, 330–32 (5th Cir. 2002) (en banc); *Pitrowski v. City of Houston*, 237 F.3d 567, 584 (5th Cir. 2001) ("Although this court has discussed the contours of the 'state-created danger' theory on several occasions, we have never adopted that theory."). In 2003, one Fifth Circuit panel utilized language suggesting the viability of the theory of state-created danger. *See Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 537-38 (5th Cir. 2003). The panel in *Scanlan* acknowledged that the Fifth Circuit had "never explicitly adopted the state-created danger theory", but then expressed that the district court "should have concluded that the plaintiffs stated a section 1983 claim" under the theory. *Id.* Despite this language, "subsequent panels have concluded that *Scanlan* did not in fact adopt the state-created danger theory." *Covington Cty. Sch. Dist.*, 675 F.3d at 865 (citing *Rivera v. Houston Ind. School Dist.*, 349 F.3d 244, 249 n.5 (5th Cir. 2003) ("In *Scanlan* . . . we did not recognize the state-created danger theory."), and *Rios v. City of Del Rio, Tex.*, 444 F.3d 417 (5th Cir. 2006)); *see also Beltran*, 367 F.3d at 307 (citing *Scanlan*, *inter alia*, as refusing to recognize the theory).

The Plaintiffs urge this Court to apply the theory because the Fifth Circuit has not expressly rejected it, and a concurring opinion in *Covington* expressed openness to it. *See* Plaintiffs' Response to Defendants' Cameron County, Texas, Omar Lucio and Antonio Tella Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint with Authority in Support and in the Alternative Motion for a More Definite Statement Pursuant to FRCP 12(e) (Doc. 21) at 6–8 (quoting extensively from the concurrence). This argument, however, is not persuasive. Whether or not the concurring opinion in *Covington* actually supports Plaintiffs' argument, it remains undisputed that numerous Fifth Circuit decisions analyzing various fact patterns have refused to adopt the state-created danger theory of liability under § 1983. In the present case,

the Plaintiffs present no compelling reason to conclude that the instant fact pattern warrants the adoption of a theory that the Fifth Circuit repeatedly has declined to apply.

This Court's decision to not accept the state-created danger theory is further supported by the fact that doing so would be futile for the Plaintiffs, as their allegations do not satisfy the elements of the theory. In *Covington*, the Fifth Circuit reached a similar conclusion under similar circumstances. *See, e.g., id.* at 865. ("We decline to use this en banc opportunity to adopt the state-created danger theory in this case because the allegations would not support such a theory."). As part of the claim, the state actor must know that the specific plaintiff was a foreseeable victim of the private actor's conduct. *See, e.g., id.* ("Critically, this court has explained that the 'state-created danger theory is inapposite without a known victim.'"); *Morin v. Moore*, 309 F.3d 316, 323–24 (5th Cir. 2002) (noting that the plaintiff must show that the state actor knew of and disregarded an excessive risk to the victim's health and safety).[4] In the present case, the Plaintiffs allege that they were in "geographical proximity to where the escape began". But they cite to no authority, and this Court has found none, in which any court extended the state-created danger theory to encompass all possible victims within a wide geographic zone. Even more remotely, the Plaintiffs allege that J.P. (a minor) or Mrs. Cancino made an emergency phone call after Mr. Garcia forcibly entered the home. But the Plaintiffs do not allege who they called or that the Defendants knew of the call. In any event, any such call would have occurred moments before the injuries that Mr. Garcia caused, and would not have provided any notice to Defendants that the Plaintiffs were possible victims.

As an additional basis for their state-created danger claim, the Plaintiffs also allege that a special relationship existed between the Defendants and the escaped inmate, Mr. Garcia. *See, e.g.*, First Amended Complaint (Doc. 14) at ¶¶ 18, 31, 44. It is true that exceptions arise to the general rule in *DeShaney* when the State's affirmative acts restrain an individual's freedom, and

---

[4] The Plaintiffs highlight that not all Fifth Circuit decisions considering the state-created danger theory mention the need to prove that the defendants knew of the specific victims placed at risk of harm from a private party. But several Fifth Circuit decisions expressly include this element as a necessary component of the theory, and no decision has rejected it.

in that restrained condition, the individual is harmed by private individuals. *See, e.g.*, *Deshaney*, 489 U.S. at 199. In such cases, a "special relationship" exists between the State and the restrained individual because the State, through the "affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself." *Id.* The Fifth Circuit has recognized three categories of special relationships: (1) incarcerated prisoners; (2) individuals voluntarily institutionalized; and (3) children in foster care. *See Covington Cty. Sch. Dist.*, 675 F.3d at 849.

The "special relationship" exceptions, however, do not help the Plaintiffs in the present case because they do not fall into any of the recognized categories that create a special relationship. The Plaintiffs do not claim that they enjoyed a special relationship with the Defendants, and instead rely on an allegation that a special relationship existed between the Defendants and Mr. Garcia. Any duties, however, that such a relationship created would run as to Mr. Garcia, and not to third parties such as the Plaintiffs. The beneficiary of a "special relationship" is the restrained individual who is "unable to care for himself", and not persons who that restrained individual may subsequently harm.

Unable to demonstrate that the Defendants should be held liable under § 1983 based on the state-created danger theory, the Plaintiffs have failed to allege facts establishing that the Defendants violated their constitutional rights. This failure proves fatal to the first cause of action. The Plaintiffs make additional specific allegations against each defendant, such as that Sheriff Lucio failed to properly supervise and train Officer Tella, that Cameron County implemented or failed to properly maintain adequate policies regarding the transportation and restraint of inmates, and that Cameron County as a municipality is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See* First Amended Complaint (Doc. 14) at ¶¶ 15-25 (policies), 27 (*Monell* liability), 32-40 (improper training and supervision). But absent the violation of constitutional rights by state actors, these allegations do not suffice to bring a claim under § 1983, and the Court need not reach the issues raised by these specific allegations.

*See, e.g., Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *Covington Cty. Sch. Dist.*, 675 F.3d at 866–67 ("We have stated time and again that '[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing.'").

### 2. The Shocks the Conscience Theory

The Plaintiffs also advance a claim under 42 U.S.C. § 1983 by alleging that the Defendants' conduct, custom and practice "shocks the conscience" and renders them liable. *See* First Amended Complaint at ¶¶ 50-51. The Plaintiffs cite to *Chavez v. Martinez*, 538 U.S. 760 (2003), as recognizing "the possibility that police behavior could 'shock the conscience,'" and contend that the Defendants' "custom or practice of improper inmate transportation and suicidal note procedures violated all Plaintiffs' Fourteenth Amendment right (sic) and Mario Martinez's right to life and bodily integrity because it shocks the conscience." *Id.* at ¶ 51.

These allegations, however, even when taken as true, do not present a viable claim under § 1983. The "shocks the conscience" standard for violation of the Due Process Clause is an extremely high standard, "requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." *Covington Cty. Sch. Dist.*, 675 F.3d at 868. In *Chavez*, the Supreme Court noted that "the official conduct 'most likely to rise to the conscience-shocking level' is the 'conduct intended to injure in some way unjustifiable by any government interest.'" *Chavez*, 538 U.S. at 775 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). Consistent with this principle, courts have found a viable § 1983 claim when a state actor intentionally and unjustifiably harmed an individual. *See, e.g., Shillingford v. Holmes*, 634 F.2d 263, 264–65 (5th Cir. 1981) (police officer intentionally struck a tourist who was photographing the officer); *Neal ex rel. Neal v. Fulton Cty. Bd. of Educ.*, 229 F.3d 1069, 1075–76 (11th Cir. 2000) (a coach blinded a student by intentionally hitting him on the head with a metal weight)

(cited in *Covington Cty. Sch. Dist.,* 675 F.3d at 849).  In contrast, the Fifth Circuit has rejected claims under the "shocks the conscience" theory in cases involving harmful conduct by private individuals, even though state actors allegedly placed the victim in harm's way.  *See Covington Cty. Sch. Dist.,* 675 F.3d at 868 (an elementary school repeatedly released a student to an unauthorized individual who then sexually assaulted the student); *see also Hernandez ex rel. Hernandez v. Texas Dept. of Protective and Reg. Servs.,* 380 F.3d 872 (5th Cir. 2004) (Child Protective Services placed a minor with an individual with a criminal record, and the individual killed the child).

In the present case, the Plaintiffs' allegations do not satisfy the "shocks the conscience" standard.  First, the Plaintiffs allege that a private individual, and not a state actor occasioned the injuries.  No allegation exists of a state actor intentionally inflicting harm on the Plaintiffs.  Second, the allegations that the Defendants ignored policies or implemented inadequate policies are also insufficient.  In fact, in *Covington*, the court concluded that the wrongful implementation and execution of policies did not shock the conscience, "particularly when compared to those cases . . . in which that standard has been successfully applied." *Covington Cty. Sch. Dist.,* 675 F.3d at 868.  Unable to satisfy the standard that the "shocks the conscience" theory requires, the Plaintiffs' § 1983 claim cannot advance.

### B.  Claims under the Texas Tort Claims Act

For the reasons previously explained, the Court has dismissed all of Plaintiffs' claims brought under 42 U.S.C. § 1983 and, as a result, has dismissed all claims over which it possesses original jurisdiction.  In these circumstances, based on 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over any remaining state law claims.  Indeed, the "general rule" is to decline to exercise jurisdiction in such circumstances, s*ee, e.g.,  Enoch v. Lampasas Cty*, 641 F.3d 155, 161 (5th Cir. 2011), and this matter presents no compelling reason to deviate from the general rule.  The case remains relatively early in its progress, and the parties will not be unduly prejudiced by having to litigate their state law claims in a Texas state

court. For this reason, the Court will decline to retain jurisdiction over the Plaintiffs' cause of action under the Texas Tort Claims Act.

## IV.	Conclusion

The Court finds the Motion to Dismiss (Doc. 20) well taken and, accordingly, it is:

ORDERED that Defendants Cameron County, Omar Lucio, and Antonio Tella's Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint is GRANTED;

ORDERED that Plaintiffs' claims under 42 U.S.C. § 1983 against all Defendants are DISMISSED WITH PREJUDICE; and

ORDERED that Plaintiffs' claim under the Texas Tort Claims Act against Cameron County is DISMISSED WITHOUT PREJUDICE.

In addition, to the extent Defendants moved for relief under Federal Rule of Civil Procedure 12(e), the motion is DENIED as moot.

SIGNED this 13th day of December, 2018.

_Fernando Rodriguez, Jr._
Fernando Rodriguez, Jr.
United States District Judge